[Civ. No. 20497. Fourth Dist., Div. Two. Aug. 1, 1979.]

IMPAC IMPORTED PARTS & ACCESSORIES CORPORATION,
Plaintiff and Respondent, v.
RICHARD RATTRAY, Defendant and Appellant.

794

COUNSEL

Rhodes, Kendall & Harrington and Howard M. Bidna for Defendant and Appellant.

Blatt & Rosoff, Boyd Lemon and Ronald K. Lachner for Plaintiff and Respondent.

OPINION

**McDANIEL, J.**—The sole question here presented for review is whether the provisions of section 2819 of the Civil Code,[1] under the operative facts of this case, resulted in the defendant surety's exoneration from liability for the balance due on his principal's promissory note. In the procedural context of a motion for summary judgment, the trial court ruled in favor of the moving plaintiff, and judgment was entered accordingly. Defendant appealed, and we affirm.

[1]Section 2819 of the Civil Code provides: "A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

## FACTS

The underlying action was to collect the balance due on a promissory note executed by Motion Clutch, Inc., a corporation, as principal, in favor of plaintiff. Defendant Richard A. Rattray, the president of Motion Clutch, Inc., subscribed a personal guarantee on the face of the note, as surety, providing, "[t]he undersigned hereby personally and unconditionally guarantees the payment of this Promissory Note in accordance with the installment payments as provided therein." It was because of this guarantee that he was also named as a defendant.

At the time suit was filed, the note was in default and the balance due thereon was $20,000 plus interest from November 1, 1976. About two months after the action was filed, plaintiff and Motion Clutch, Inc., entered into a written "Stipulation for Judgment." The stipulation provided for entry of judgment for $21,650, representing the principal sum plus $900 in interest and $750 for attorney's fees. It also provided that it would not be filed for so long as monthly installments of $5,000 were paid commencing April 22, 1977. Defendant was not a party to the stipulation, and a little more than three months after it was entered into defendant filed an answer, pleading a special affirmative defense which included an allegation that "[d]efendant is exonerated as a Guarantor and any liability is discharged pursuant to the provisions of Civil Code Section 2819 in that any obligation which Defendant may have had has been extinguished by reason of the modification and change in the terms of said Exhibit 'A' to the Complaint without the consent or approval or ratification of defendant." The "modification and change" referred to by defendant was the stipulation noted.

Motion Clutch made the first two installment payments due under the stipulation, a total of $10,000, and then defaulted. As a consequence, some eight months after defendant had filed his answer, plaintiff moved against defendant for summary judgment to recover the $10,000 principal and $900 interest still owing on the promissory note. The declarations filed in support of plaintiff's motion reflected all of the foregoing facts. The declaration filed in opposition to the motion did not dispute anything asserted by the supporting declarations, but added that defendant did not agree to or in any way participate in the stipulation entered into between plaintiff and Motion Clutch, Inc., defendant's principal.

As a consequence, the trial court was presented solely with a question of law and, as already noted, ruled in favor of plaintiff, awarding $10,900 principal, interest thereon at 7 percent from September 2, 1977, the date of the day following the filing of defendant's answer, plus reasonable attorney's fees as provided in the note and calculated under local court rule 23 in the amount of $854. Defendant then appealed.

## ISSUES AND DISCUSSION

As observed at the outset, the sole issue to be resolved on this appeal is whether the stipulation, entered into between plaintiff and the principal *after* the action was filed, operated to release the defendant surety under the provisions of section 2819 of the Civil Code. More particularly, the question is whether that stipulation "altered in any respect" the original obligation "or the remedies or rights of the creditor against the principal." If the stipulation accomplished either of these consequences, then the defendant surety would have been exonerated.

The defendant's position is clearly stated in his brief. As he sees the consequence of the stipulation, it extended the time for payment beyond the time when the promissory note would have been due, i.e., July 22, 1977, as against April 30, 1977. According to defendant, the stipulation also rescinded the acceleration clause. He claims that the stipulation effected five other alterations, but the two contentions, specifically noted, if correct, would certainly call for the application of section 2819 and result in defendant's exoneration.

However, defendant misconceives the legal consequences of what happened here. Plaintiff filed suit on the note which at the time of such filing was in default. This represented a remedy which the creditor had at all times after the principal defaulted. Moreover, as of that time both the principal, Motion Clutch, and the defendant surety had become jointly and severally liable on the promissory note by reason of section 2807 of the Civil Code which provides, "[a] surety who has assumed liability for payment or performance is liable to the creditor immediately upon the default of the principal, and without demand or notice."

In such instances, the creditor is entitled to pursue either the principal or surety independently, and even a delay in pursuing the principal does not affect the creditor's rights against the surety. Actually, it has been held, after a default by the principal, that the creditor may pursue

an independent action against the surety without the need of any prior collection effort, by suit or otherwise, against the principal. (*Ingalls* v. *Bell*, 43 Cal.App.2d 356, 367 [110 P.2d 1068].)

 However, in this case, the creditor elected to sue both the principal and the surety in the same action, naming them in separate counts as independently liable on the note obligation then in default. Then, after the action had been filed and the factual basis for the litigation fixed as of that date, the creditor arranged with the principal for entry of judgment against the principal only on certain conditions. It is here that defendant appears to misconceive the legal consequences of what was done. It is elementary, and as Witkin points out, that "[a] valid judgment in favor of the plaintiff *merges* the claim in the judgment. The cause of action is extinguished and the only remaining right of action is on the judgment. [Citations.]" (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 189, p. 3329, original italics.) As a consequence, the arrangements made for installment payments and otherwise were made with reference to a new obligation of the principal only and did not in any way operate to modify the terms of the promissory note. Moreover, because of the operation of section 2807, defendant remained independently liable on the note, regardless of the entry of judgment against Motion Clutch, its principal.

It could perhaps be argued that for so long as the stipulation remained unfiled that, legally speaking, there was actually no judgment and hence no merger. However, had judgment been entered and execution been stayed for so long as payments were made on account, our merger theory would clearly apply. Accordingly, we see reason to make a substantive rule turn on the technical form of the transaction. The plaintiff, in entering into the stipulation, was simply implementing his legal remedy against the principal, and the stipulation represented a new and independent agreement in aid of that remedy which in no way operated to alter the terms of the promissory note.

The factual situation here presented appears to be controlled by *Ramish* v. *Astor*, 5 Cal.App.2d 225 [42 P.2d 334]. In that case, Ramish loaned Astor $6,150 for which Astor executed a promissory note, and Eureka Casualty Company executed a bond guaranteeing repayment of the money by Astor. Astor did not pay, whereupon, Ramish filed a complaint alleging a cause of action on the note and a cause of action on the bond against Eureka Casualty Company, the same causes of action as

alleged in the complaint before us. Before trial, Ramish and Astor entered into a stipulated judgment for $6,150 principal, accrued interest and attorneys' fees in the sum of $2,000 and Ramish agreed to a stay of execution for 60 days. This is essentially the same stipulation as entered into here, except that it provided for immediate entry of judgment and stay of execution. The lower court found that the stipulation operated to alter the original obligation, and on that basis exonerated the surety. The Court of Appeal reversed, stating, ". . . it has been held in this state that even a personal surety was not released by circumstances such as herein detailed. [Citation.] The exact question on similar facts is decided adversely to respondent in the case of *Rio Grande Oil Co.* v. *Seaboard Surety Corp. of America,* 139 Cal.App. 164 [33 Pac. (2d) 887], recently decided by this court, in which ample reasons are given for the ruling. [¶] The judgment is reversed, and the trial court is directed to enter judgment in favor of appellant and against respondent." (*Id.,* at pp. 226-227.)[2]

Reference to *Rio Grande Oil* and other attachment release bond cases calls for a comment on the recent decision in *V.I.P. Agency of No. Cal. Inc.* v. *Duffy Electronics, Inc.,* 92 Cal.App.3d 849 [155 Cal.Rptr. 45]. In *V.I.P.* there was an attachment perfected at the time suit was filed, and it was released when Duffy presented an undertaking pursuant to section 489.310 of the Code of Civil Procedure in the amount of $10,200. Duffy then answered, admitting liability of $5,903.89. Thereafter, the parties stipulated for judgment in the sum of $7,000 on condition that execution be stayed pending payment of the judgment in installments until the total of $7,000 had been paid.

The opinion in *V.I.P.* next relates that *V.I.P.* moved for judgment against the surety company whose bond had enabled release of the attachment, such motion being for $4,500. The trial court granted the motion, and on appeal the judgment was reversed with directions "to render a new judgment exonerating the surety."

[2]The opinion in *Ramish* does not discuss the reason for its holding except to cite *Rio Grande Oil.* Reference to that case reveals that it involved an *attachment release bond* situation. There, in an independent action against the surety on the release bond, the surety argued for its exoneration because the complaint had been amended to plead an allegedly different obligation than that pleaded at the time the attachment was released. The actual holding of *Rio Grande Oil* is that the amendment of the complaint did *not* constitute an alteration of the original obligation. As such it does not represent clear cut authority for the proposition for which it was cited in *Ramish,* for the implication was clear that amendment of the complaint in a given case *could* represent an alteration sufficient to exonerate the surety.

The court analyzed the facts in light of section 2819 and, without elaboration, observed that the Duffy obligation had been modified in two ways by the stipulation: (1) the amount of the obligation was reduced from $10,200 to $7,000; and (2) enforcement was deferred. The court held that the reduction was not an "alteration" as contemplated by section 2819 but that the extension, "transforming an immediate obligation to pay into an obligation that was enforceable only according to a schedule of deferred payments was a substantial alteration of the 'original obligation of the principal.'" The court further held that "[i]t also altered the 'remedies or rights of the creditor against the principal . . .'" and hence exonerated the surety, citing *Montgomery* v. *Ottoman,* 88 Cal.App. 755 [264 P. 283]. *Montgomery* also involved the surety on an attachment release bond almost identical on its operative facts as the *V.I.P.* case.

In our view *V.I.P.* and *Montgomery* were correctly decided. Despite the procedural similarity of those cases and the case now before us in the form of the stipulation for judgment, coupled with a deferred payment plan, the former cases are inapposite because there was actually an alteration of the obligations therein guaranteed whereas there was no such alteration in the current case. More particularly, when a surety bond is filed to enable the release of an attachment, the surety undertakes to guarantee the payment of any judgment entered against the defendant according to the allegations of the complaint as of the time the bond is filed. As a consequence, any dealing between the plaintiff creditor and the defendant principal which alters the theory of action or, more commonly, alters the remedies of the plaintiff creditor against the defendant principal, e.g., deferring execution, clearly operates to exonerate the surety under section 2819 and the holding in the *V.I.P.* case.

However, in the case before us there was never any modification or alteration of the promissory note. At all times, the note obligation which defendant had guaranteed and for which he had become independently liable under section 2807, remained, vis-à-vis the surety, just as it had from the beginning. The stipulation which plaintiff and the principal entered into was not with an eye to altering the terms of the note but to implementing a remedy which the plaintiff at all times was at liberty to pursue against the principal after default.

Nevertheless, because the judgment derived from the note obligation, the $10,000 paid on account appropriately accrued also to defendant's

credit, but, we reiterate, the note obligation as to defendant was not merged and remained unaltered at the time plaintiff moved for summary judgment against defendant. That this was the circumstance was recognized by the trial court which did not enforce the attorney fee award stipulated to by Motion Clutch but made an independent determination thereof based upon local rule 23.

## DISPOSITION

The judgment is affirmed, and upon motion of plaintiff, following the filing of the remittitur in the trial court, that court is directed to fix a reasonable attorney's fee on appeal to be recoverable as part of the judgment herein.

Kaufman, Acting P. J., and Morris, J., concurred.

On August 24, 1979, the judgment was modified to read as printed above.